UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ENDOWMENT RESEARCH       :
GROUP, LLC       :
         Plaintiff,       :
      :
v.       :
      :
HENLEY USA ACQUISITIONS,       :
LLC       :
         Defendant.       :
      :
      :
_____ :

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Endowment Research Group, LLC ("ERG") files this, its Complaint for

Injunctive Relief and Damages, against Defendant Henley USA Acquisitions, LLC, and

states as follows:

### I. INTRODUCTION

1.

This action arises from Henley's violations of the Non-Disclosure Agreement

dated September 11, 2019, by and between ERG and Henley (the "NDA"). ERG seeks

injunctive relief to compel Henley to return information disclosed to Henley under the

NDA and to restrain Henley's ongoing breaches, as well as damages for the harm

Henley has caused ERG.

### II. PARTIES, JURISDICTION, AND VENUE

2.

ERG is a limited liability company organized and existing under the laws of the

State of Delaware.

3.

Henley is a limited liability company organized and existing under the laws of the State of Delaware. Henley may be served with process by and through its Registered Agent with the Delaware Secretary of State, the Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

4.

This Court has subject matter jurisdiction over Count I of this Complaint pursuant to 28 U.S.C. § 1331 because this claim arises under federal law. This Court has subject matter jurisdiction over ERG's state law claims pursuant to 28 U.S.C. § 1367.

5.

Jurisdiction and venue are proper in this Court because, in Section 14 of the NDA, Henley consented to jurisdiction and venue in this Court. Moreover, ERG was based in and maintained its principal place of business in Palos Park, Illinois, a suburb of Chicago, at the time the NDA was signed.

### III. <u>STATEMENT OF FACTS</u>

### <u>Background on ERG</u>

6.

ERG is an investment consulting firm that helps investors identify funds, among other investment vehicles, in which to invest.

7.

ERG has developed and maintains a global network of ultra-high net worth and

family office clients that rely on ERG for advice and direction on how to invest their substantial assets.

8.

ERG specializes in seeking out and developing relationships with top fund managers to best advise its clients on how to invest their assets.

9.

Investment firms also frequently approach ERG to seek access to its world-class investor clients, many of which control many billions of dollars' worth of assets.

10.

When an investment firm comes to ERG seeking assistance identifying investors, ERG first screens the firm to ensure it has the pedigree to produce the strong returns ERG's clients expect.

11.

If ERG finds the firm to be suitable, ERG asks the firm to sign an NDA.

12.

Once an NDA is executed, ERG generates a list of potential suitable investors that are likely to be interested in the firm's offerings.

13.

ERG then asks the investment firm to confirm it does not have a pre-existing relationship with the potential investors.

14.

After ERG has confirmed that a firm does not have pre-existing relationships

3

with the potential investors in ERG's client network, ERG introduces the firm to its potential investors pursuant to the NDA.

### Henley and ERG

15.

The above is what occurred with respect to Henley.

16.

In or around May 2019, Henley contacted ERG and expressed an interest in accessing ERG's investor base to secure large ticket investments into real estate and other asset classes.

17.

Conversations continued throughout 2019, during which time ERG informed Tony Wilcox, the Group Director of Investor Relations for Henley, of ERG's typical fee break compensation model, whereby an investment firm like Henley agrees to (1) reduce the amount of fees it will charge the clients which ERG introduces to the firm and which ultimately decide to make an investment in the firm; and (2) pay ERG a percentage of these fees in exchange for its services in introducing the client to the firm.

18.

ERG also explained to Henley that it required an NDA before the identities of any potential investors would be revealed.

19.

Henley was amenable to ERG's compensation model and to signing an NDA.

20.

On September 11, 2019, Henley executed ERG's NDA. A copy of the NDA is attached as Exhibit "A." The purpose of the NDA was to ensure that ERG could confidentially share its valuable client lists, contacts and relationships, for which ERG expected to be compensated if used by Henley.

21.

The NDA expressly contemplated that ERG would disclose its confidential information and trade secrets to Henley in the form of, among other things, introductions of potential investors within ERG's network who may be interested in making investments in Henley's funds.

22.

Pursuant to Section 3 of the NDA, Henley agreed, among other things, that it would not use any confidential information or trade secrets disclosed by ERG for any purpose except that which is set forth in the NDA.

23.

Under Section 2 of the NDA, "Confidential Information" includes clients and investors of ERG. "Trade Secrets" also includes client lists of ERG.

24.

Henley acknowledged that all of ERG's intellectual property is considered Confidential Information and a Trade Secret.

25.

Henley also acknowledged that ERG has invested considerable time, effort, and

expense developing its intellectual property, including its ultra-high net worth and family office clients.

26.

Henley agreed in Section 6 of the NDA that "[a]ll Confidential Information that has been disclosed by either party to the other party, and all copies or extracts thereof that are in the possession of the other party, shall be and remain, the property of the disclosing party and shall be promptly destroyed or returned to the disclosing party upon written request."

27.

Protection of ERG's confidential and trade secret information, including its client information and lists, is so important that Henley further agreed in Section 9 of the NDA that:

> breach or threatened breach of this Agreement will cause irreparable injury to the other party and that money damages will not provide an adequate remedy for such breach or threatened breach, and both parties hereby agree that, in the event of such a breach or threatened breach, the non-breaching party will also be entitled, without the requirement of posting a bond or other security, to equitable relief, including injunctive relief and specific performance.

**Henley's Violations of the NDA**

28.

Henley has blatantly violated and disregarded the NDA by circumventing ERG with potential investors ERG has identified and then claiming post hoc that introductions made by ERG are not subject to the NDA.

6

29.

Specifically, after executing the NDA, on October 10, 2019, Henley verbally cleared potential investor names identified by ERG. Henley confirmed the cleared names again by e-mail on October 26, 2019. Henley later cleared additional potential investors identified by ERG. Thus, according to Henley, it did not have pre-existing relationships with the potential investors identified by ERG.

30.

ERG subsequently began to make introductions to potential investors pursuant to the NDA for the benefit of Henley.

31.

However, in February 2020, Henley began claiming it had preexisting relationships with potential investors ERG had introduced Henley to and which Henley had previously "cleared" in October 2019.

32.

In April 2020 — six months after confirming it did not have a relationship with any of the potential investors — Henley attempted to "retract" its clearance of nine of the investor names that it had previously confirmed it did not have a pre-existing relationship with, and identified several others that it claimed it needed to investigate whether there was a pre-existing relationship.

33.

Henley claimed it had pre-existing relationships with some of the investors and refused to compensate ERG if any of those potential investors ultimately invested with

Henley.

34.

In or around May 2020, Henley said it would not compensate or credit ERG for *any* of the investor names that had previously been identified by ERG and cleared by Henley.

35.

Upon information and belief, after ERG disclosed its client list to Henley during the clearance process, Henley has communicated with the potential investors identified by ERG without ERG's participation and/or before ERG has made a formal introduction.

36.

Therefore, after receiving the benefits of ERG's protected confidential information about, and relationships with, ERG's world-class investor clients, Henley began circumventing ERG and communicating with those potential investors directly to avoid crediting ERG with introductions and to avoid compensating ERG.

37.

ERG raised its concerns with Henley, requested Henley come into compliance with the NDA, and attempted to salvage the parties' relationship. However, Henley has refused to discuss in good faith reasonable compensation to ERG for the valuable introductions it has made, and it has refused to come into compliance with the NDA.

38.

In light of Henley's refusal, pursuant to Section 6 of the NDA, ERG demanded

in writing that Henley return all confidential information ERG had disclosed to Henley under the NDA, as well as copies thereof and all information derived from ERG's confidential information, including all files which contain the identities of the potential investors which ERG introduced to Henley (and which, as discussed above, Henley agreed in the NDA constitute ERG's Trade Secrets and Confidential Information).

39.

ERG also demanded Henley come into compliance with the NDA by ceasing to use the blue-chip and multi-billion-dollar investor information and identities that ERG had disclosed to Henley pursuant to the NDA.

40.

A copy of ERG's demand is attached as Exhibit "B".

41.

Henley has failed to return ERG's confidential information and remains in breach of the NDA.

42.

Upon information and belief, Henley continues to use ERG's protected client list and investor information that it failed to return, to solicit investments from ERG's clients in violation of the NDA and without compensating ERG.

43.

ERG is suffering irreparable harm based on Henley's failure to return its information and because Henley is putting at material risk ERG's client relationships by circumventing ERG and communicating with those clients directly rather than through

ERG.

## COUNT I:

## ACTION FOR VIOLATION OF FEDERAL TRADE SECRET LAWS

44.

ERG repeats and realleges every allegation set forth above as if fully set forth herein.

45.

The Defend Trade Secrets Act (the "DTSA") of 2016, Pub. L. No. 114-153, 130 Stat. 376, which was passed into law on May 11, 2016 and amends chapter 90 of Title 18 of the U.S. Code, forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1) (as amended).

46.

Under the DTSA, "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if, (A) the owner thereof has taken reasonable measures to keep such information secret, and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can

obtain economic value from the disclosure or use of the information." 18 U.S.C.
§ 1839(3) (as amended).

47.

Under the DTSA, "misappropriation" means "(A) acquisition of a trade secret of
another by a person who knows or has reason to know that the trade secret was
acquired by improper means; or (B) disclosure or use of a trade secret of another
without express or implied consent by a person who: (i) used improper means to
acquire knowledge of the trade secret; or (ii) at the time of disclosure or use, knew or
had reason to know that the knowledge of the trade secret was: (I) derived from or
through a person who had used improper means to acquire the trade secret; (II)
acquired under circumstances giving rise to a duty to maintain the secrecy of the trade
secret or limit the use of the trade secret; or (III) derived from or through a person who
owed a duty to the person seeking relief to maintain the secrecy of the trade secret or
limit the use of the trade secret; or (iii) before a material change of the position of the
person, knew or had reason to know that (I) the trade secret was a trade secret and (II)
knowledge of the trade secret had been acquired by accident or mistake." 18 U.S.C. §
1839(5) (as amended).

48.

Under the DTSA, "improper means" "(A) includes theft, bribery,
misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or
espionage through electronic or other means; and (B) does not include reverse
engineering, independent derivation, or any other lawful means of acquisition." 18

11

U.S.C. § 1839(6) (as amended).

49.

Henley acknowledged in the NDA that ERG has invested considerable time, effort, and expense developing its intellectual property, including its ultra-high net worth and family office clients, and that all of ERG's intellectual property, including its client lists and client relationships, is considered a trade secret.

50.

ERG derives economic value from the fact that its trade secrets are not generally known to individuals or entities outside of ERG.

51.

ERG takes reasonable measures to protect the secrecy of such information as described herein. These measures include password-protected databases, confidentiality and non-disclosure agreements, and limitations on dissemination of information on a need-to-know basis. ERG does not make any introductions of potential investors until an investment firm has executed an NDA and confirmed it does not have pre-existing relationships with those investors.

52.

Henley acquired ERG's trade secrets under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

53.

Henley knew it had a duty to maintain the secrecy of ERG's trade secrets.

54.

Henley has already demonstrated an intent and design to breach the NDA and put ERG's trade secret information at risk.

55.

Henley's actions constitute misappropriation and/or threatened misappropriation in violation of the DTSA.

56.

ERG is entitled to actual damages caused by Henley's misappropriation.

57.

ERG has suffered and will continue to suffer irreparable harm as a result of Henley's breaches and threatened breach of the DTSA, thereby requiring equitable injunctive relief in addition to compensatory relief.

58.

Henley's acts were willful, entitling ERG to exemplary damages of two times the actual damages otherwise proven as well as an award of reasonable attorney's fees to ERG.


## COUNT II:

**ACTION FOR SPECIFIC PERFORMANCE OF SECTION 6 OF THE NDA**

59.

ERG repeats and realleges every allegation set forth above as if fully set forth herein.

13

60.

The NDA is a valid and enforceable contract.

61.

ERG has fulfilled its obligations under the NDA by, among other things, disclosing to Henley its confidential and proprietary information regarding its ultra-high net worth and family office clients, who are potential investors for Henley.

62.

Section 6 of the NDA states, "[a]ll Confidential Information disclosed by either party to the other party, and all copies or extracts thereof that are in the possession of the other party, shall be and remain, the property of the disclosing party and shall be promptly destroyed or returned to the disclosing party upon written request."

63.

ERG has made demand for the return of all confidential information ERG had disclosed to Henley under the NDA.

64.

Henley has violated Section 6 by failing to return ERG's confidential information as required by the NDA.

65.

ERG is entitled to a temporary restraining order and/or preliminary injunction compelling Henley to perform under the NDA by returning ERG's confidential information as required by Section 6.

14

## COUNT III:

### ACTION FOR BREACH OF THE NDA

66.

ERG repeats and realleges every allegation set forth above as if fully set forth herein.

67.

The NDA is valid and enforceable.

68.

ERG has fulfilled its obligations under the NDA by, among other things, disclosing its confidential and proprietary client information to Henley.

69.

Section 3 of the NDA states, "Henley shall not use any Confidential Information of ERG, including but not limited to the identity of Underlying Managers, Underlying Funds and Clients, for any purpose whatsoever, except to evaluate the Opportunity or as a client of ERG."

70.

"Opportunity" is defined in section 1 of the NDA as "a potential business relationship of mutual interest in relation to endowment-style investing for family offices."

71.

Henley violated Section 3 of the NDA by using, and continuing to use, ERG's confidential information to seek investments from ERG's investor clients, after

purportedly revoking its prior "clearance" of investors disclosed to it by ERG pursuant to the NDA.

72.

Henley has also violated Section 6 of the NDA by failing to return ERG's confidential information upon written request.

73.

As a direct and proximate result of Henley's breaches, ERG has suffered and continues to suffer damages.

74.

ERG is entitled to an award of all damages caused by Henley's violations of the NDA in an amount to be determined and proven at the time of trial.

75.

ERG is also entitled to injunctive relief to enjoin further breaches, and ERG will suffer irreparable harm if an injunction against Henley does not issue.

## COUNT IV:

### ACTION FOR VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, 765 ILCS § 1065, *et seq.*

76.

ERG repeats and realleges every allegation set forth above as if fully set forth herein.

77.

Henley's actions as described herein constitute misappropriation and/or threatened misappropriation in violation of the Illinois Trade Secrets Act.

78.

Henley has obtained ERG's trade secrets—including its client lists, which it expressly acknowledged constitute confidential information and trade secrets belonging to ERG—through improper means, including misrepresentation and breach of its duty to maintain secrecy and limit use of ERG's confidential information and trade secrets pursuant to the NDA.

79.

ERG derives economic value from the fact that its trade secrets are not generally known to individuals or entities outside of ERG.

80.

ERG takes reasonable measures to protect the secrecy of such information as described herein. These measures include password-protected databases, confidentiality and non-disclosure agreements, and limitations on dissemination of information on a need-to-know basis. ERG does not make any introductions of potential investors until an investment firm has executed an NDA and confirmed it does not have pre-existing relationships with those investors.

81.

ERG is entitled to actual damages caused by Henley's misappropriation.

82.

ERG has suffered and will continue to suffer irreparable harm from Henley's breaches and threatened breach of the Illinois Trade Secrets Act, thereby requiring equitable injunctive relief in addition to compensatory relief.

83.

Henley's acts were willful, entitling ERG to exemplary damages as well as an award of reasonable attorney's fees.

## PRAYER FOR RELIEF

ERG respectfully prays of this Honorable Court as follows:

a)      For temporary, preliminary, and permanent injunctive relief compelling Henley to return all confidential information and trade secrets of ERG as required by Section 6 of the NDA;

b)      For temporary, preliminary, and permanent injunctive relief restraining Henley from using in any manner, or otherwise disclosing to any third party, any and all confidential information or trade secrets of ERG in Henley's possession, custody, or control;

c)      For a judgment against Henley in an amount to be proven at trial;

d)      For an award of exemplary damages;

e)      For an award of ERG's reasonable attorneys' fees and expenses of litigation incurred in pursuing this Complaint;

f)      For such other and further relief as the Court deems just, proper and equitable under the circumstances.

18

Dated: September 4, 2020

Respectfully submitted,

ENDOWMENT RESEARCH GROUP, LLC

By: _/s/Adam Goodman_____
     One of Its Attorneys

Adam Goodman (ARDC 6229333)
Goodman Tovrov Hardy & Johnson LLC
105 West Madison Street
Suite 1500
Chicago, Illinois 60602
(312) 238-9592
(312) 264-2535 (Facsimile)
agoodman@goodtov.com

Neal F. Weinrich (Georgia Bar No. 294586)
Ashley M. Bowcott (Georgia Bar No. 871190)
Berman Fink Van Horn P.C.
3475 Piedmont Road, N.E., Suite 1100
Atlanta, Georgia 30305
(404) 261-7711
(404) 233-1943 (Facsimile)
nweinrich@bfvlaw.com
abowcott@bfvlaw.com
(Request for Admission Forthcoming)